UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN TOVAR DELEON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:22-cv-00591-CDB (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]<br><br>(Docs. 17, 18, 21) |

Plaintiff Juan Tovar Deleon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 17, 18, 21). Upon review of the Administrative Record (Doc. 12-1, "AR") and the parties' briefs, the Court finds and rules as follows.

**I.    BACKGROUND**

　　**A. Administrative Proceedings and ALJ's Decision**

Plaintiff filed a Title XVI application for supplemental security income on January 23, 2018. (AR 234-39). Plaintiff's application was denied initially and upon reconsideration, and

---

[1] Based on the parties' consent to magistrate judge jurisdiction for all purposes, this action was reassigned on February 23, 2023, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 20).

Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 155-58, 162-69). On April 23, 2020, ALJ Shiva Bozarth held a hearing, during which Plaintiff, represented by counsel, and an independent vocational expert testified. (AR 39-72). The ALJ issued his decision on August 5, 2020, finding Plaintiff not disabled. (AR 19-31). On December 9, 2020, the Appeals Council declined Plaintiff's request for review.[2] (AR 10-12).

In his decision, the ALJ engaged in the five-step sequential evaluation process set forth by the Social Security Administration. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 26, 2017, the application date. (AR 22). At step two, the ALJ determined that Plaintiff had the severe impairment of schizophrenia. (AR 22). At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23). In reaching this conclusion, the ALJ considered the four broad functional areas of mental functioning listed in the "paragraph B" criteria,[3] and concluded Plaintiff had moderate limitations in all four areas. (AR 23-24).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but had additional nonexertional limitations. (AR 24-25). Specifically, Plaintiff could perform simple routine tasks and routine work-related decision

---

[2] On April 26, 2022, Plaintiff received an extension of time to seek court review of the decision such that this action is timely. (AR 1).

[3] The "paragraph B criteria" evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P. App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.* An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." *Id.* Finally, a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited." *Id.*; *see Carlos v. Comm'r of Soc. Sec.*, No. 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1   making, but could never have contact with the general public. (AR 24-25).

2         At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant
3   work. (AR 29). At step five, based on the testimony of the vocational expert, and considering
4   Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could
5   perform jobs that exist in the national economy, such as laundry laborer, industrial cleaner, and
6   marking clerk. (AR 30). Accordingly, the ALJ found Plaintiff had not been under a disability
7   from December 26, 2017, the application date, through the date of decision. (AR 31).

8         **B. Medical Record and Hearing Testimony**

9         The relevant hearing testimony and medical record were reviewed by the Court and will
10  be referenced below as necessary to this Court's decision.

11  **II.  STANDARD OF REVIEW**

12        A district court's review of a final decision of the Commissioner of Social Security is
13  governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the
14  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or
15  is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial
16  evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a
17  conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence
18  equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (citation
19  modified). In determining whether the standard has been satisfied, a reviewing court must
20  consider the entire record as a whole rather than searching for supporting evidence in
21  isolation. *Id.*

22        The court will review only the reasons provided by the ALJ in the disability determination
23  and may not affirm the ALJ on a ground upon which he did not rely. Social Security Act § 205,
24  42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its
25  judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the
26  evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d
27  1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account
28  of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's]

ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant

4

disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." 20 C.F.R. § 416.920(e). Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III.   ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. (Doc. 1). Plaintiff raises a single issue:

> The ALJ's RFC determination is the product of legal error where the ALJ failed to properly account for mental limitations identified in the ALJ's own findings.

(Doc. 17 at 19).

### A. Legal Standard

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. *Id.* However, an ALJ's RFC finding need only be consistent with relevant assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual functional capacity determination. … These limitations were entirely consistent with Dr. Koogler's limitation."). An ALJ need not use the same language as the medical opinion setting forth the limitations, as long as the RFC sufficiently accounts for the limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

### B. ALJ's RFC Analysis

The ALJ concluded Plaintiff retained the RFC to perform simple routine tasks and routine work-related decision making, but could never have contact with the general public. (AR 24-25). In explaining this RFC, the ALJ summarized Plaintiff's function report and hearing testimony, the medical records, and a third-party function report completed by Plaintiff's brother. AR 25-29). The ALJ found persuasive opinions from the State agency consultants, who concluded that Plaintiff could perform simple, routine tasks with limited contact with the public. (AR 28). The ALJ found these opinions persuasive because they were consistent with the record, noting that "[p]eople and crowds overwhelmed [Plaintiff], but he was able to maintain good family relationships, was close with his nephew and niece, and he walked most mornings to talk with

1  friends" and "was able to follow a three-step command." (AR 28). The ALJ also found
2  somewhat persuasive the opinion of Dr. Loni Pusateri, Plaintiff's psychiatrist, who concluded
3  Plaintiff would be absent from work r days per month and would be unable to complete an 8-hour
4  workday three days per month due to his mental impairments and the need for ongoing and
5  periodic medical treatment. (AR 28).

6        The ALJ also found "somewhat persuasive" the opinion of consultative examiner Dr.
7  Megan Stafford, who opined Plaintiff was "unimpaired in his ability to perform simple and
8  repetitive tasks and detailed and complex tasks;" "moderately impaired in his ability to interact
9  with co-workers, supervisors, and the public due to paranoid delusions, poor insight, mood
10  lability and internal preoccupation;" "moderately impaired in his ability to complete a normal
11  workday without interruptions form [sic] a psychiatric condition and deal with the usual stress
12  encountered in the workplace;" and "mildly impaired in his ability to maintain regular attendance
13  in the workplace." (AR 28-29). The ALJ explained that the "portion of the opinion indicating
14  [Plaintiff] was unimpaired in his ability to perform complex tasks [was] not supported" based on
15  Plaintiff's schizophrenia diagnosis, auditory hallucinations, difficulty understanding and
16  concentrating, and limited education. (AR 29). However, the remaining portion of the opinion
17  was supported "by the medical record because the [Plaintiff's] irrational behaviors, paranoia and
18  auditory hallucinations prevent him from interacting with the general public or making routine
19  decisions." (AR 29).

20  **C. Arguments and Analysis**

21        Plaintiff argues that while the "ALJ concluded that Plaintiff had moderate limitations
22  across all four domains of the psychiatric review technique," the ALJ erred when he "crafted an
23  RFC that only limited Plaintiff to 'simple routine tasks, routine work related decision making, but
24  can never have contact with the general public.'" (Doc. 17 at 20). Specifically, Plaintiff argues
25  "the ALJ failed to explain why there were no limitations as to Plaintiff's ability to maintain
26  concentration, persistence, and pace incorporated into the RFC." (*Id.* at 21). Plaintiff also asserts
27  the ALJ erred in considering the opinion of psychological consultative examiner Dr. Megan
28  Stafford because the ALJ found the opinion "somewhat persuasive" but failed to account for

several of the limitations assessed, including a moderate impairment in Plaintiff's ability to complete a normal workday and deal with stress and a mild impairment in his ability to maintain regular attendance. (*Id.* at 23).

In response, Defendant argues the RFC is supported by substantial evidence. (Doc. 18 at 6). Defendant asserts the ALJ did incorporate Dr. Stafford's opined limitations "by limiting the type and complexity of work Plaintiff had the capacity to perform." (*Id.*). To support this position, Defendant points to the State agency psychological consultants' opinions, which found the same moderate limitations as the ALJ and "concluded that despite those moderate limitations, Plaintiff could perform simple work." (*Id.* at 7). Defendant argues that in addition to the medical evidence and opinions, the ALJ relied on Plaintiff's activities of daily living to support the RFC. (*Id.* at 7-9). Defendant argues "Plaintiff has not identified a discrete, functional limitation that Dr. Stafford recommended and that the ALJ found to be persuasive, but that was not incorporated in the RFC." (*Id.* at 15).

Plaintiff replies that "Defendant's brief focuses only on the ALJ's accounting for the assessed moderate limitation in ability to maintain concentration, persistence, and pace," but "fails to respond to Plaintiff's argument that the ALJ neglected to properly account for the moderate limitations in the other three domains as well—adapting and managing oneself; interacting with others; and understanding, remembering, or applying information." (Doc. 21 at 3). Additionally, Plaintiff argues "the ALJ offered no explanation for his failure to account for the moderate 'Paragraph B' limitations and Defendant may not manufacture one for him now" by pointing to the State agency opinions. (*Id.* at 4).

To the extent Plaintiff challenges the ALJ's failure to include in the RFC additional limitations as to his ability to maintain concentration, persistence, and pace, the Court finds this argument unavailing. As Defendant argues, the RFC's limitation to simple routine tasks and routine work-related decision making is consistent with the opinion's finding of moderate limitations in Plaintiff's concentration, persistence, and pace. *See Stubbs-Danielson*, 539 F.3d at 1173-74 (concluding limitation to "simple tasks" adequately accounted for plaintiff's pace and mental limitations). *See, e.g., Kuhn v. Comm'r of Soc. Sec.*, No. 1:22-cv-00966-SAB, 2023 WL

8

3994989, at *7 (E.D. Cal. June 14, 2023) ("While Plaintiff also asserts the RFC did not account for the moderate [concentrate, persist, and maintain pace] limitations in Dr. Starrett's opinion, the Court concludes the ALJ sufficiently incorporated that limitation into the RFC by limiting the type and complexity of work Plaintiff could perform."); *Gonsalves v. Comm'r of Soc. Sec.*, No. 2:15-cv-0940-TLN-CMK, 2017 WL 698279, at *8 (E.D. Cal. Feb. 22, 2017) ("Thus, as the ALJ did in *Stubbs-Danielson*, and accepted by the Ninth Circuit, the ALJ in this case concluded that the plaintiff, despite deficiencies in his concentration and social functioning abilities, retained the ability to do simple, repetitive, routine tasks."), *F&R adopted*, 2017 WL 8894659 (Oct. 5, 2017). While Plaintiff may wish the ALJ had included additional limitations regarding his concentration, because the RFC is at least consistent with the opined moderate limitations in concentration, the ALJ did not err.

However, the Court concludes the ALJ did err in failing to either incorporate into the RFC Plaintiff's limitations regarding attendance or explain why he chose not to accept those specific limitations. *See Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020) (citing *Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012)) ("Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them."). Here, as discussed above, the ALJ found Dr. Stafford's opinion somewhat persuasive, but rejected *only* her conclusion that Plaintiff was unimpaired in his ability to perform detailed and complex tasks. (AR 28-29). Despite accepting the remainder of Dr. Stafford's opinion, the ALJ provided no additional discussion of her attendance opinions, or why additional limitations in the RFC were not warranted to account for Plaintiff's mild impairment in his ability to maintain attendance and moderate impairment in his ability to complete a normal workday without interruption. (*See* AR 28-29).

Defendant argues the RFC accounted for the attendance limitations because the State agency consultants "recommended that Plaintiff had a *moderate* limitation in this area and yet, still opined that Plaintiff could perform simple tasks and routines, even with this limitation." (Doc. 18 at 14-15). As Defendant indicates, the State agency examiners' opinions include

9

moderate limitations in Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and to complete a normal workday or workweek without interruption, but ultimately concluded that Plaintiff was capable of "maintaining concentration, pace and persistence for simple tasks and routines throughout a normal workday/workweek." (AR 131, 147). While the ALJ may have properly relied on the State agency opinions and concluded additional limitations were not warranted, the issue is that the ALJ did not indicate such in his opinion. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1004 (9th Cir. 2015) (a court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"). Rather, the ALJ's decision is entirely silent as to why limitations concerning Plaintiff's attendance and ability to complete a workday without interruption were not necessary despite *all* the expert opinions finding at least some limitation in these areas.

Thus, the ALJ erred by failing to either account for these limitations in the RFC or explain why additional limitations were not warranted. Further, because the Court cannot say that this error was inconsequential to the ultimate nondisability determination, the error was not harmless. *Tommasetti*, 533 F.3d at 1038.

### IV.  CONCLUSION AND ORDER

For the reasons stated above, the Court ORDERS as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 17) is GRANTED;
2. The decision of the Commissioner is reversed, and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order; and
3. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Eddie E. Hensley and against Defendant Commissioner of the Social Security Administration.

IT IS SO ORDERED.

Dated:  **September 19, 2025**

UNITED STATES MAGISTRATE JUDGE